BROWN, Chief Judge,
dissenting.
liThe primary issue before us is whether plaintiffs mother, ergo plaintiff, knew or should have known about defendant’s production of plaintiffs unleased mineral interests. The majority’s holding would have us impute constructive knowledge of defendant’s production to Mrs. Wells as a result of her failure to monitor her mineral interests. This holding is neither rooted in equity nor justice. Noting Zadeck’s admission that Mrs. Wells’ one-fourth interest was overlooked, how is it equitable to punish someone for their failure to monitor their unleased mineral interests, when the law places no such burden.on them, while rewarding a company for its failure to perform an affirmative duty created by law-i.e., to provide notice of forced pooling, issue reports to owners of unleased interests, and tender payment to unleased mineral interest owners within 180 days? See La. R.S. 80:10 and 30:103.1, which state in pertinent parts:
La. R.S. 30:10 A
(l)(a) All orders requiring pooling shall be made after notice and hearing. They shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense.... (3) If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract’s pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale. li>La. R.S. 30:103.1
Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
(1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
(2) After establishment of production from the unit well, quarterly reports which shall contain the following:
(a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
(b) The price received from any purchaser of unit production.
(c) Quarterly operating costs and expenses.
(d) Any additional funds expended to enhance or restore the production of the unit well.
In Amoco, supra, Amoco, a major oil and gas corporation, subleased five of its leaseholds in Vermilion Parish. The contract executed by the parties contained a “reassignment clause,” whereby the defendants, one of which was IMC, were not to allow the cancellation of any of the leases without providing notice to Amoco at least 60 days in advance. In 1976 the defen *868 dants allowed one of the leases to expire, and in 1981 the defendants released then nonproducing acreage from the other four leases. The defendants subsequently took new leases in their names on these properties. In 1993 Amoco hired a landman to audit its properties being operated by outside companies such as the defendants. This audit led to the discovery of |sthe lease cancellations 18 and 13 years prior. Summarizing the parties’ arguments and its conclusion, the Third Circuit stated:
IMC argues Amoco should have discovered the lease cancellations earlier because they were duly recorded in the Vermilion Parish public records. IMC cites a number of cases in support of this contention.... In all of these cases, the court found the plaintiff had a duty to investigate the public records because [plaintiff] was clearly placed on notice of a possible injury. Amoco argues these cases do not apply to an unsuspecting plaintiff, who has no notice of the potential claim as a direct result of defendant’s failure to provide information it was required by contract to furnish. We find Amoco’s argument persuasive in this instance.... (Emphasis added) (Citations omitted).
Amoco, supra at 830-31.
Noting the factual similarities of the Amoco case, the majority nonetheless disregards its applicability in the present matter and, without any qualifying distin-guishment, merely states that “the present case boils down to one of proof, or the lack thereof.” While I recognize that the record proves, and Zadeck does not dispute, that Zadeck and/or its predecessors-in-interest failed to furnish Mrs. Wells with the information and payments it was obligated by law to furnish her, the majority finds plaintiffs inability to demonstrate any actions his mother may have performed to monitor her mineral interests fatal. Based upon this reasoning, proof that a-defendant failed to perform its affirmative duties is of no consequence unless the plaintiff can also prove that she performed her nonexistent duty of monitoring her mineral interests.
The majority contends that Mrs. Wells could have learned of the mineral production through the exercise of reasonable diligence. According to the majority, Mrs. Wells could have communicated with neighbors of the | property or called her successor-in-title on the phone. Plaintiffs testimony, however, reveals that Mrs. Wells was a single mother living in a different parish than the Property at the time the Shirey Well No. 1 began production. She had no car and barely scraped by on a minimum wage job. Regardless, the majority apparently finds that reasonable diligence entails tracking down and cold calling potential neighbors and possible successors-in-title to a property sold more than 16 years prior, to find out if, unbeknownst to her, an oil and gas company was usurping her mineral interests. To place such a onerous burden on her to, basically, do the job that Zadeck and their predecessors-in-interest should have done, without her having some prior notification of a possible injury, is unreasonable.
Further, I take issue with the majority’s repeated characterization of Mrs. Wells as someone who had familiarity with the exploration, leasing, and drilling processes as a result of her one-time execution of a mineral lease. Not only did she execute the lease contemporaneously with Mr. Wells, which could indicate her reliance on his mineral leasing knowledge, but the particular well drilled as a result of the lease was actually drilled on the Property. Meanwhile, in the present case, the completed well was not on the 120 acres in which Mrs. Wells had an interest, but was located on a different tract within the drill- *869 mg unit. To try to equate the knowledge needed to execute a mineral lease where a well will be drilled on the actual property you have an interest in, to being familiar with the complexities involved in a forced pooled unit, is quite an overreach.
UThe equitable nature of the circumstances in each case determines whether contra non valentón is applicable. See Matthews, supra. In the case sub judice, the totality of the circumstances demonstrates that Zadeck, a sophisticated oil and gas company, failed to perform its affirmative duty to, inter alia, tender unto plaintiff and his predecessors-in-interest their pro rata share of the production proceeds. Mrs. Wells, an unsuspecting plaintiff, had no knowledge that her unleased mineral interests were being produced. Her ignorance was not the result of her being negligent, as the law places no duty on an unleased mineral interest owner to scour the public records or cold call successors-in-title to make sure that their mineral interests are not being usurped. Accordingly, I find that the majority was erroneous in its conclusion that, as a result of Mrs. Wells’ failure to monitor her mineral interests, plaintiff could not avail himself of the jurisprudential exception of contra non valentem.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, PEATROSS, and MOORE, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.